1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT
9                 FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11  STEVE H GOMEZ,                        No   C 04-0819 VRW (pr)
12          Petitioner,                   ORDER
13          v
14  D L RUNNELS, Warden
15          Respondent.
16  _____/
17          Petitioner was convicted by a jury in the Superior Court
18  of the State of California in and for the County of Santa Clara of
19  attempted murder and assault with a deadly weapon and various
20  enhancements.  On or about February 22, 2000, he was sentenced to
21  23 years in state prison.
22          Petitioner appealed, but the California Court of Appeal
23  affirmed the judgment of conviction and the Supreme Court of
24  California denied review.  He also unsuccessfully sought collateral
25  relief from the state courts.  On February 4, 2004, the Supreme
26  Court of California denied his final petition for state habeas
27  relief.
28  \\

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

Petitioner then filed the instant federal petition for a writ of habeas corpus under 28 USC § 2254. Per order filed on July 21, 2004, the court found that the petition, liberally construed, stated cognizable claims under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent filed an answer to the order to show cause and petitioner filed a traverse.

I

The California Court of Appeal summarized the factual background of the case as follows:

> On March 5, 1999, Mary Varela and defendant went to a bar called The Place. There they met an acquaintance, Richard Aguilar. After drinking and dancing, Varela and defendant decided to go to another bar called The Green Parrot. As they were leaving The Place, Aguilar asked if he could join them. They arrived at The Green Parrot between 10:00 and 10:30 pm, and they continued drinking and dancing. While he was in the men's room, Aguilar assaulted codefendant Danny Rizo.
>
> At about 1:30 am, Varela decided to go to a party. Defendant, Aguilar and "Johnny" planned to go with her. Varela was the driver, defendant was the front passenger, Aguilar sat behind Varela and Johnny sat behind defendant. While they were waiting for some friends, defendant began honking impatiently on the horn. Varela asked him to stop and Aguilar asked him to "chill out." After defendant and Aguilar began shouting profanities at each other, Varela asked them to get out of her car. Defendant and Aguilar exited the vehicle and began fighting each other with their fists. According to Aguilar, Aguilar "was getting the better of" defendant. Varela said that it was more of a wrestling match, and the two fell to the ground almost immediately. Mestaz testified that they were standing and engaged in a fistfight, but she testified at the preliminary hearing that it was more of a wrestling match on the ground. Varela and Johnny left the scene.
>
> As defendant and Aguilar were fighting, Rizo attacked Aguilar. According to Aguilar, Rizo was

2

punching him when he and defendant were still standing and before he was stabbed. [Bystander Tina] Mestaz testified that Rizo was kicking and punching Aguilar after Aguilar was bloodied and had fallen to the ground.

No one saw a weapon. Mestaz testified that she saw defendant reach towards his belt and then hold something that looked shiny. Aguilar did not see anything in defendant's hands, but he felt defendant stabbing him with a sharp object in his face and neck. When Aguilar tried to protect himself, he was stabbed in the hand. He did not realize until later that he had also been stabbed in the back. Aguilar attempted to continue the fight as defendant and Rizo tried to walk away, but he collapsed. A woman pinched the stab wound on his neck to reduce the bleeding. Aguilar suffered five stab wounds, one of which punctured his lung.

[Martha Adames, a patron at The Green Parrot, testified that Aguilar told her a month after the incident that defendant was the one who stabbed him.]

Officer Hofstein arrived at the scene at 1:47 am. He found Aguilar near the car and called for medical assistance. Mestaz told him that there were three people involved. She gave a description of defendant and the car he entered, and the direction in which they were traveling. The information was transmitted to Sergeant Wall, who then stopped the vehicle fitting that description. Sergeant Wall spoke with defendant, who matched the description given by Mestaz. He noticed that defendant was bleeding from the mouth, and asked him what had happened. Defendant stated that he did not know what the sergeant was talking about. Defendant denied being at The Green Parrot. Sergeant Wall detained defendant for a field lineup. Mestaz then identified defendant as one of the men that attacked Aguilar. Sergeant Wall placed defendant under arrest.

According to Sergeant Wall, defendant appeared as if he had been drinking, but he did not appear intoxicated or under the influence of drugs. In Officer John Moutzouridis's opinion, defendant displayed some symptoms consistent with being under the influence of PCP, but the officer never conducted an examination of defendant. Officer Baugh booked defendant and did not notice symptoms of defendant being under the influence of drugs.

Defendant had a blood alcohol level of .10 percent at 3:50 am and PCP was "detected." Rizo had a blood alcohol level of .17 percent at 4:05 am. Aguilar had a

3

United States District Court

For the Northern District of California

blood alcohol level of .219 percent at 2:30 am.
According to Anne Imobersteg, a toxicologist, Aguilar's
blood alcohol level during the incident was .236
percent.  Aguilar reported that he drank eight or nine
beers at The Place and a few more at The Green Parrot.
Officer Hofstein described him as incoherent.  Aguilar
told Dominick Ha, an investigator with the district
attorney's office, that he had problems remembering the
incident because he was so drunk.

Mestaz and a friend shared a 12-pack of beer
before arriving at The Green Parrot around 12:30 am,
where she had another six or seven beers and two shots
of tequila.  Imobersteg estimated Mestaz's blood
alcohol level during the incident was between .22 and
.29 percent.  Officer Hofstein described Mestaz as
lucid and coherent.  Mestaz told a defense investigator
that she did not remember much of the incident, because
she was too drunk and had personal problems.

Adames testified that she drank eight to ten beers
between 8:00 pm and 1:30 am.  Imobersteg estimated that
her blood alcohol level was between .18 and .24
percent.  Varela testified that she had six drinks at
The Place and The Green Parrot.

Imobersteg testified that when the blood alcohol
level reaches .06 or .09 percent, a person starts to
lose cognitive functions, such as accurate memory,
perception and comprehension.  When blood alcohol
levels reach about .25 percent, the person becomes
disoriented and confused.  She did concede, however,
that heavy drinkers have a higher tolerance.
Imobersteg also testified that PCP could create mood
swings and irrational behavior.  When test results show
that PCP was "detected," there is no indication of the
concentration of PCP or whether it would affect the
person.

People v Gomez, 2002 Cal App Unpub LEXIS 4997 at **2-8 (Cal Ct App

2002) (footnotes omitted).


II

A federal writ of habeas corpus may not be granted with

respect to any claim that was adjudicated on the merits in state

court unless the state court's adjudication of the claim:   (1)

"resulted in a decision that was contrary to, or involved an

4

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 USC § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v Taylor, 529 US 362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  Id at 409.

The only definitive source of clearly established federal law under 28 USC § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.  Id at 412; Clark v Murphy, 331 F3d 1062, 1069 (9th Cir 2003).  While circuit law may be "persuasive authority" for

**United States District Court**
For the Northern District of California

5

purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied.  <u>Clark</u>, 331 F3d at 1069.

III

Petitioner seeks federal habeas corpus relief on the grounds that his constitutional rights were violated when (i) trial counsel failed to challenge Mestaz's testimony effectively and diligently, (ii) the trial court refused to give petitioner's requested jury instruction and (iii) the trial court refused to overrule the jury's verdict because of insufficient evidence.

A

The court first addresses petitioner's contention that his constitutional rights were violated when trial counsel failed to challenge Mestaz's testimony effectively and diligently. Petitioner first made this argument in a habeas petition to the California Court of Appeal; both the California Court of Appeal and the California Supreme Court denied the habeas petition without comment.

Petitioner has the burden of showing that trial counsel's performance fell below an "objective standard of reasonableness" under prevailing professional norms and "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Strickland v Washington</u>, 466 US 668, 687-88, 694 (1984).

United States District Court

For the Northern District of California

1    Mestaz's statements were inconsistent in three instances.

2 First, Mestaz told Officer Hofstein on the night of the incident

3 that petitioner pulled Aguilar from the car at the beginning of the

4 fight.  At trial, however, Mestaz, testified that petitioner

5 stepped out of the car, walked around to the other side and opened

6 the door for Aguilar to get out, which Aguilar did hesitantly.

7 Second, Mestaz told Officer Hofstein that she did not know whether

8 petitioner had a weapon, but she testified at trial that she saw

9 petitioner reach towards his belt and then hold something "shiny."

10 Third, Mestaz testified at the preliminary hearing that petitioner

11 and Aguilar were standing and engaged in a fist fight, while at

12 trial Mestaz testified that they were wrestling on the ground.

13    In addition to trial counsel's failure to attack the

14 inconsistencies in Mestaz's statements aggressively, petitioner

15 also contends that trial counsel failed to make an issue out of

16 Mestaz's inebriation.  Mestaz's blood alcohol level was estimated

17 to be between .22 and .29 percent during the incident.

18    Petitioner fails to show that trial counsel's performance

19 fell below an "objective standard of reasonableness" under

20 prevailing professional norms because counsel did present the

21 inconsistencies in Mestaz's statements and her inebriation.  See

22 Doc #14, Ex B at 388 (counsel arguing to jury that Mestaz was

23 drunk), 394-98 (counsel reciting the inconsistencies and memory

24 lapses in Mestaz's testimony).  While petitioner may wish that

25 trial counsel had been more effective in persuading the jury,

26 petitioner has provided no grounds for a determination that his

27 counsel's efforts were anything short of exemplary.  Accordingly,

28 the performance of petitioner's trial counsel cannot be said to

**7**

United States District Court

For the Northern District of California

1  fall below an "objective standard of reasonableness" under

2  prevailing professional norms.  See Strickland, 466 US at 687-88.

3      Even if trial counsel should have attacked Mestaz's

4  inconsistencies and inebriation more aggressively and diligently,

5  petitioner's claim fails for lack of prejudice.  Mestaz's testimony

6  that petitioner had a "shiny" object was redundant with, and

7  certainly less effective than, Aguilar's testimony and wounds, and

8  Mestaz's testimony placing petitioner at the scene of the crime was

9  redundant with the testimony of Varela and Aguilar.  Thus, the two

10  essential elements of petitioner's conviction supported by Mestaz's

11  testimony — the fight between petitioner and Aguilar, and

12  petitioner's possession of a knife — were substantially

13  corroborated by other evidence.  Besides, counsel for codefendant

14  Rizo also presented Mestaz's inconsistencies to the jury, so the

15  jury would of been presented with the inconsistencies separate of

16  any effort by trial counsel.  Doc #14, Ex B at 402-406.  More

17  aggressive and diligent argument concerning Mestaz's

18  inconsistencies almost certainly would not have affected the

19  outcome of the trial.  Strickland, 466 US at 694.

20      An expert witness testified that Mestaz's blood alcohol

21  level was between .22 and .29 during the incident, and that people

22  with blood alcohol levels above .25 percent often are disoriented

23  and confused.  Trial counsel argued to the members of the jury that

24  they should disregard Mestaz's testimony since she was drunk.  Doc

25  #14, Ex B at 388.  Because, in addition to trial counsel's pleas

26  that Mestaz's testimony was unreliable, the jury heard from an

27  expert witness the degree and likely effect of Mestaz's

28  inebriation, it cannot be said that there is a reasonable

probability that "the result of the proceeding would have been different" had trial counsel been more aggressive and diligent in presenting Mestaz's inebriation.

The California Court of Appeal and California Supreme Court did not unreasonably apply federal law when they denied petitioner's claim.  As discussed above, the record supports the findings that trial counsel performed at or above an "objective standard of reasonableness" under prevailing professional norms and that to the degree trial counsel's performance could have been better, there is not a reasonable probability that "the result of the proceeding would have been different."  <u>Strickland</u>, 466 US at 687-88, 694.  Petitioner is not entitled to federal habeas relief on his claim of ineffective assistance of counsel.  See 28 USC § 2254(d).

**B**

The court next addresses petitioner's contention that his constitutional rights were violated when the trial court refused to give petitioner's requested jury instruction.  Petitioner raised this claim on appeal, and the California Court of Appeal discussed it at length.  See <u>People v Gomez</u>, 2002 Cal App Unpub LEXIS 4997 at **8-19.

Under California law, "a trial court must instruct on the general principles of law relevant to the issues raised by the evidence.  The general principles of law governing the case are those principles closely and openly connected with the facts before the facts before the courts * * *."  <u>People v Breverman</u>, 19 Cal 4th 142, 154 (Cal 1988) (citing <u>People v St Martin</u>, 1 Cal 3d 524, 531

United States District Court

For the Northern District of California

(Cal 1970)).  "A criminal defendant is entitled, on request, to an instruction 'pinpointing' the theory of his defense."  <u>People v Wharton</u>, 53 Cal 3d 522, 570 (Cal 1991).  A trial court errs when it refuses to give requested instructions that are supported by the evidence, are not argumentative and are not duplicative of other instructions.  Id at 571.  A requested instruction is "argumentative" if it is based on a theory of defense that arises only when the evidence is viewed in the light most favorable to the criminal defendant.  <u>People v Wright</u>, 45 Cal 3d 1126, 1135 (Cal 1988).

To obtain federal habeas relief for error in the jury charge, petitioner must show that the error "so infected the entire trial that the resulting conviction violates due process."  <u>Estelle v McGuire</u>, 502 US 62, 72 (1991).  The error may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.  Id.

Where potentially defective instructions are at issue, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the instructions in a way that violates the Constitution.  See id at 72 & n4; <u>Boyde v California</u>, 494 US 370, 380 (1990).  A determination that there is a reasonable likelihood that the jury has applied the instructions in a way that violates the Constitution, however, establishes only that a constitutional error has occurred.  <u>Calderon v Coleman</u>, 525 US 141, 146 (1998).  If constitutional error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict before granting habeas
\\

United States District Court
For the Northern District of California

1  relief.  Id at 146-47 (citing Brecht v Abrahamson, 507 US 619, 637

2  (1993)).

3          "An omission, or an incomplete instruction, is less

4  likely to be prejudicial than a misstatement of the law."

5  Henderson v Kibbe, 431 US 145, 155 (1977).  Accordingly, "a habeas

6  petitioner whose claim involves a failure to give a particular

7  instruction bears an 'especially heavy burden.'"  Villafuerte v

8  Stewart, 111 F3d 616, 624 (9th Cir 1997) (quoting Henderson, 431 US

9  at 155).

10         Petitioner requested the following instruction:

11  If you believe from the evidence, or if you entertain a
    reasonable doubt therefrom, that decedent was the
12  aggressor in the affray, or that he assaulted the
    person of the defendant, then the defendant was
13  entitled under the law to invoke the aid of
    self-defense and in so doing she [sic] had the right to
14  lawfully resort to such means for force as to her [sic]
    may have appeared necessary under the circumstances as
15  a reasonable person to repel or resist the same.  If
    after a careful consideration of all the evidence, you
16  should believe therefrom, or if you should entertain a
    reasonable doubt therefrom, that the defendant herein
17  was the victim of an assault at the hands of decedent
    or if you believe that the defendant at the time, as a
18  reasonably prudent person honestly and in good faith
    believed herself [sic] to be the victim of such an
19  assault, although you might find that she [sic] was in
    fact mistaken, then you are instructed that she [sic]
20  was entitled to act upon such appearances with safety
    and defend herself [sic], although it may afterwards
21  have been shown that the appearances were not justified
    by the facts.
22

23         The trial court modified petitioner's requested

24  instruction and presented to the jury the following instruction:

25  It is a defense to the crimes charged that the
    defendant was acting in self-defense.  The burden is on
26  the prosecution to prove beyond a reasonable doubt that
    defendant did not act in self-defense.  In other words,
27  the defendant need not prove to you that he acted in
    self-defense.  He must only raise a reasonable doubt on
28  that issue.  If you find that the prosecution has not

11

United States District Court

For the Northern District of California

1    proven the absence of self-defense beyond a reasonable
2    doubt, the defendant is entitled to a verdict of not
     guilty.

3        The trial court also gave many California Jury
4    Instructions (CALJIC) regarding the elements of self-defense:

5        The attempted killing of another person in self-defense
     is justifiable and not unlawful when the person who
6    does the act actually and reasonably believes:  One.
     That there is imminent danger that the other person
7    will either kill him or cause him great bodily injury;
     and Two.  That it was necessary under the circumstances
8    for him to use in self-defense such force or means as
     might cause the death of the other person for the
9    purpose of avoiding death or great bodily injury to
     himself.  A bare fear of death or great bodily injury
10   is not sufficient to justify a homicide.  To justify
     taking the life of another in self-defense, the
11   circumstances must be such as to excite the fears of a
     reasonable person placed in a similar situation, and
12   the party killing must act under the influence of such
     fears alone.  The danger must be apparent, present,
13   immediate and instantly dealt with, or must so appear
     at the time to the slayer as a reasonable person, and
14   the killing must be done under a well-founded belief
     that it is necessary to save one's self from death or
15   great bodily injury.  [CALJIC No 5.12]

16   Actual danger is not necessary to justify self-defense.
     If one is confronted by the appearance of danger which
17   arouses in his mind as a reasonable person an honest
     conviction and fear that he's about to suffer bodily
18   injury, and if a reasonable person in a like situation
     seeing and knowing the same facts would be justified in
19   believing himself in like danger, and if that
     individual so confronted acts in self-defense upon such
20   appearances and from such fear and honest convictions,
     such person's right of self-defense is the same whether
21   such danger is real or merely apparent.  [CALJIC No
     5.51]
22
     The right of self-defense exists only as long as the
23   real or apparent threatened danger continues to exist.
     When such danger ceases to appear to exist, the right
24   of self-defense ends.  [CALJIC No 5.52]

25   The right of self-defense is not available to a person
     who seeks a quarrel with the intent to create a real or
26   apparent necessity of exercising self-defense.  [CALJIC
     No 5.55]
27
     A person who attempts to kill another person in the
28   actual but unreasonable belief in a necessity to defend

12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court

For the Northern District of California

against imminent peril to life or great bodily injury attempts to kill unlawfully but does not harbor malice aforethought and is not guilty of attempted murder. This would be so even if a reasonable person in the same situation seeing and knowing the same facts would not have had the same belief.  Such an actual but unreasonable belief is not a defense to the crime of attempted voluntary manslaughter.  However, this principle is not available, and malice aforethought is not negated, if the defendant by his unlawful act or unlawful conduct created the circumstances which legally justified his adversary's use [of] force or attack.  [CALJIC No 5.17]

The law of self-defense as it applies in this case is as follows:  It is lawful for a person who is being assaulted to defend himself from attack if, as a reasonable person, he has grounds for believing and does believe that bodily injury is about to be inflicted upon him.  In doing so, such person may use all force and means which he believes to be reasonably necessary and which would appear to a reasonable person in the same or similar circumstances to be necessary to prevent the injury which appears to be imminent. [CALJIC No 5.30]

A person threatened with an attack that justifies the exercise and the right of self-defense need not retreat.  In the exercise of his right of self-defense such person may stand his ground and defend himself by the use of all force and means which would appear to be necessary to a reasonable person in a similar situation and with similar knowledge, and such person may pursue such assailant until he has secured himself from danger, if that course likewise appears reasonably necessary.  This law applies even though the assailed person might more easily have gained safety by flight or by withdrawing from the scene.  [CALJIC No 5.50]

[CALJIC No 5.51 was repeated.]

The right of self-defense ends when there is no longer any apparent danger of further violence on the part of an assailant.  Thus, where a person is attacked under circumstances that justify the exercise of the right of self-defense, and thereafter the person uses enough force upon his attacker as to render the attacker apparently incapable of inflicting further injuries, the right to use force in self-defense ends.  [CALJIC No 5.53]

[CALJIC No 5.55 was repeated.]

An assault with the fists does not justify the person being assaulted in using a deadly weapon in

1
2
3

> self-defense unless that person believes, and a
> reasonable person in the same or similar circumstances
> would believe, that the assault is likely to inflict
> great bodily injury upon him.  [CALJIC No 5.31]

4
5
6
7
8
9

> The right of self-defense is only available to a person
> who engages in mutual combat, if he has done all of the
> following:  One.  He has actually tried in good faith
> to refuse to continue fighting; Two.  He has clearly
> informed his opponent that he wants to stop fighting;
> Three.  He has clearly informed his opponent that he
> has stopped fighting; and Four.  He has given his
> opponent the opportunity to stop fighting.  After he
> has done these four things, he has the right to
> self-defense if his opponent continues to fight.
> [CALJIC No 5.56]

10   Petitioner claims that "the court below failed to decern

11 [sic] that the evidence [that he acted in self-defense] need not be

12 overwhelming; a modicum was sufficient."  Doc #1 (Petition for Writ

13 of Habeas Corpus) at 8.  The court disagrees.

14   The trial court's special instruction states that the

15 "burden is on the prosecution to prove beyond a reasonable doubt

16 that defendant did not act in self-defense. * * * [Defendant] must

17 only raise a reasonable doubt on that issue."  This special

18 instruction clearly informed the jury that petitioner needed to

19 raise only a reasonable doubt that he acted in self-defense; the

20 trial court in no way expressed that the evidence of self-defense

21 had to be overwhelming.

22   Moreover, as the California Court of Appeal aptly noted

23
24
25
26
27
28

> the instructions given on the burden of proof beyond a
> reasonable doubt (CALJIC No 2.90), on self-defense and
> the relationship between the two sets of instructions,
> adequately informed the jury that the prosecution was
> required to establish beyond a reasonable doubt that
> defendant did not act in self-defense.  Since the
> instructions required a determination beyond a
> reasonable doubt that defendant did not act in
> self-defense, they necessarily informed the jury that
> it must find beyond a reasonable doubt that an
> essential element of CALJIC No 5.12 (Attempted Killing

14

in Self-defense) or CALJIC No 5.30 (Assault in
Self-defense) did not exist or ceased to exist [CALJIC
Nos 5.52, 5.53], that defendant had sought out a
quarrel to create a self-defense situation [CALJIC No
5.55] or that it was a mutual combat situation in which
one or more of the four required elements was not met
or the victim did not continue to fight [CALJIC No
5.56].  Thus, defendant's proposed instruction was
adequately covered by the instructions given by the
trial court.

People v Gomez, 2002 Cal App Unpub LEXIS 4997 at *16.

        Nor can it be said that the trial court's failure to give
petitioner's proposed instruction, even if error, amounted to
actual prejudice.  Petitioner's proposed instruction utilizes
feminine pronouns and involves situations of self-defense in
response to assault.  Not only is the instruction argumentative,
since only the petitioner's version of the incident remotely
supports a finding that petitioner acted in self-defense following
an assault (Wright, 45 Cal 3d at 1135), but the minor differences
between the given instructions and the requested instruction
clearly could not have had a "substantial and injurious effect or
influence in determining the jury's verdict." Brecht v Abrahamson,
507 US 619, 637 (1993).

        The California Court of Appeal did not unreasonably apply
federal law when it denied petitioner's instructional error claim.
See 28 USC § 2254(d).  Petitioner is not entitled to federal habeas
relief on this claim.

C

        The court next addresses petitioner's final contention,
that his constitutional rights were violated when the trial court
\\

United States District Court

For the Northern District of California

refused to overrule the jury's verdict because of insufficient evidence.

A state prisoner who alleges that the evidence in support of his conviction cannot fairly be characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt states a constitutional claim, which, if proven, entitles him to federal habeas relief.  Jackson v Virginia, 443 US 307, 321, 324 (1979).  A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  Payne v Borg, 982 F2d 335, 338 (9th Cir 1992).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Id (quoting Jackson, 443 US at 319).  If confronted by a record that supports conflicting inferences, a federal habeas court "must presume — even if it does not affirmatively appear on the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  Jackson, 443 US at 326.  Only if no rational trier of fact could have found proof beyond a reasonable doubt may a writ of habeas corpus be granted.  Id at 324.

California Penal Code sections 664 and 187 criminalize attempted murder.  The prosecution, in order to secure a conviction for attempted murder, must prove beyond a reasonable doubt that: (1) "[a] direct but ineffectual act was done by one person towards killing another human being"; and (2) "the person committing the \\

16

act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."  CALJIC No 8.66.

Assault with a deadly weapon and by means of force likely to produce great bodily injury is criminalized by California Penal Code section 245(a)(1-2).  In order to secure a conviction for assault with a deadly weapon and by means of force likely to produce great bodily injury, the prosecution must prove beyond a reasonable doubt that:  (1) "[a] person was assaulted"; and (2) "[t]he assault was committed with a deadly weapon or instrument, other than a firearm, by means of force likely to produce great bodily injury."  CALJIC No 9.02.

In the instant case, the prosecution presented the testimony of Aguilar, Varela and Mestaz, the blood found on petitioner and his subsequent denial of involvement in the fight. The evidence provides strong proof that petitioner fought Aguilar, stabbed him in the neck and elsewhere and did so with the intent to kill Aguilar.  In short, the record contains sufficient evidence for a rational trier of fact to find that petitioner satisfied all of the elements required for attempted murder and assault with a deadly weapon.  The court must presume that the jury resolved any conflicts, such as whether petitioner stabbed Aguilar, whether petitioner was acting in self-defense and whether petitioner intended to kill Aguilar, in favor of the prosecution.  <u>Jackson</u>, 443 US at 321, 324.

It simply cannot be said that the trail court unreasonably applied federal law when it refused to overturn the jury's verdict.  Or, more importantly, that the state appellate and supreme courts unreasonably applied federal law when they rejected

petitioner's claim.  See 28 USC § 2254(d).  A rational trier of fact could have found proof of guilt beyond a reasonable doubt, satisfying the rule established by the Supreme Court in <u>Jackson</u>.

IV

  For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

  The clerk shall enter judgment in favor of respondent and close the file.

  SO ORDERED.

_____

**VAUGHN R WALKER**

**United States District Chief Judge**